# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID J. TANZOSH,** | : | **No. 3:05cv1084** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **INPHOTO SUVEILLANCE,** | : | |
| **KROLL, INC.,** | : | |
| **TODD KARPINSKI, and** | : | |
| **FACTUAL PHOTO, INC.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are defendants' motions for summary judgment (Docs. 49,

52).  Having been fully briefed, the matters are ripe for disposition

## Case Background

This case arises out of litigation brought by plaintiff against the Delaware and

Hudson Railway Company in 2002.  (See Tanzosh v. Delaware & Hudson Railway

Company, Inc., No. 02cv1407 (M.D. Pa. 2002)); (Additional Defendant Factual

Photo, Inc.'s Statement of Material Facts (Doc. 51) (hereinafter "Factual Photo

Statement") at ¶ 1); (Defendants InPhoto Surveillance, Kroll, Inc., and Todd

Kasprenski's Statement of Undisputed Facts (hereinafter "InPhoto Statement") at ¶

1).  Before trial, the Defendant Railway Company conducted surveillance of plaintiff

in an attempt to challenge his claims of work-related injuries.  (Plaintiff's Reply to

Defendant Factual Photo's Statement of Material Facts (hereinafter "Plaintiff's

Reply") (Doc. 62) at ¶ 1) (InPhoto Statement at ¶ 12).  Hiring firms to conduct such surveillance was a common practice in such matters for the Railway Company. (InPhoto Statement at ¶ 11).  Defendants InPhoto Surveillance, Kroll, Inc. and Todd Kasprenski conducted such surveillance on four days, April 4 and 11, 2002 and May 8 and 9, 2002.  (Id. at ¶ 13).  Only Defendant Kasprenski actually conducted surveillance at the behest of InPhoto and Kroll.  (Id. at ¶ 14).

The Railway Company hired another surveillance firm to monitor the plaintiff after InPhoto, Kroll and Kasprenski concluded their efforts.  (Id. at ¶ 15).  Factual Photo, Inc. conducted surveillance on the plaintiff on July 25-27, 2002 and February 18-21, 2003, (Id. at ¶ 16).  Factual Photo sent two-person teams to monitor the plaintiff.  (Id. at ¶ 17).  Brian Corbett and Chad Campbell conducted the surveillance in July 2002 and William Clark and Lawrence A. Walters did the same in February 2003.  (Id. at ¶ 18).

Defendants conducted surveillance of the plaintiff on or near his property in Kunkletown, Pennsylvania.  This property consisted of a large farm located at the end of a one-mile driveway.  (Plaintiff's Additional Statement of Material Facts in Opposition to Defendant Factual Photo's Motion for Summary Judgment (Doc. 62) (hereinafter "Additional Statement") at ¶ 5).  Plaintiff had posted "Keep Out" signs down the entire length of this driveway.  (Id.).

According to the plaintiff, the individuals hired by the Railway Company to perform surveillance defamed him to his neighbors and others in his community.

2

(InPhoto Statement at ¶ 19).  The defamation allegedly consisted of accusations that plaintiff was faking the injuries he claimed in his lawsuit against the Railroad and statements that plaintiff was involved in criminal activity.  (Id. at ¶ 20).  Defendants' employees made these defamatory statements to gain permission to access plaintiff's neighbors' property and monitor the plaintiff.  (Id. at ¶ 19).  The persons conducting surveillance also trespassed on plaintiff's land, lied about their identities and purposes to plaintiff and his brother and caused damage to plaintiff's land.  (Id. at ¶ 21).

Plaintiff points to three acts of trespassing on his land.[1]  (Id. at ¶ 23).  Two of those incidents occurred during President Day's weekend in February 2003.  (Id.).  Defendants InPhoto, Kroll and Kasprenski had ceased providing their services to the Railway Company by that point.  (Id. at ¶ 24).  Defendant Factual Photo continued to conduct surveillance for CP Rail at that time.  (Id.).  On a date of which plaintiff was unsure, an unidentified male came onto plaintiff's property and was confronted by plaintiff's brother.  (Id. at  ¶ 25).  This unnamed person told plaintiff's brother that he was searching for his biological father and had been told that he worked for plaintiff's construction company.  (Id. at ¶ 26).  He then left the property.  (Id.).  Testimony taken during depositions indicates that the person who entered plaintiff's property and concocted this story was Douglas Clark, an employee of Defendant Factual

---

[1]Plaintiff agrees with this statement, but adds that his allegations also include statements made to neighbors and community members on other occasions.  (Plaintiff's Statement in response to Factual Photo's Statement at ¶ 23).

Photo.  (Id. at ¶ 27).  Another set of trespassers later appeared on plaintiff's property.  (Id. at ¶ 28).  He followed them to the local post office and warned them that he would notify the police if they again trespassed on his land.  (Id. at ¶ 28). Investigators employed by Defendant Factual Photo admit that they were confronted by plaintiff at the local post office on February 21, 2003.  (Id. at ¶¶ 29-30).

The third trespassing incident apparently occurred on May 13, 2003.  (Id. at ¶ 31).  Plaintiff testified that his brother confronted these trespassers as well.  (Id. at ¶ 32).  When confronted, these trespassers sped away from the scene, kicking up stones which broke a window on plaintiff's brother's home.  (Id.).

According to the plaintiff, the parties conducting surveillance also used the property of a neighbor, Rick Gower, in their efforts.  (Id. at ¶ 34).  When Gower confronted the investigator on his property, the investigator told him that he was working for the state police investigating the sale and receipt of stolen goods on plaintiff's property.  (Id. at ¶ 35).  The parties disagree over whether this investigator specifically mentioned plaintiff's name when discussing the alleged investigation. (Id. at ¶ 36; Plaintiff's Statement in Response to InPhoto, at ¶ 36).

Plaintiff reported two trespass incidents to the state police.  (Additional Statement at ¶ 8).  The persons performing the surveillance provided false information as to their identities and the license plates on their cars could not be traced.  (Id.).  Plaintiff attempted as well to identify persons on his property without his permission, but his efforts were frustrated by the efforts made by the parties

4

performing the surveillance to disguise themselves.  (Id. at ¶ 9).  Defendant Factual

Photo's employees confirmed in their depositions that they used such false

information to avoid being identified.  (Id.).  Neither the plaintiff nor the Pennsylvania

State Police were able to identify those who had trespassed on his property.  (Id. at ¶

12).  Only during the litigation of this matter was plaintiff able to discover the

involvement of Factual Photo in the underlying case against the railroad.  (Id. at ¶¶

10-11).

Plaintiff filed the instant action on May 27, 2005.  (See Complaint (Doc. 1)).

The original complaint named as defendants International Claim Specialists, InPhoto

Surveillance, Kroll, Inc. and Todd Kasprenski.  Plaintiff stipulated to the voluntary

dismissal of Defendant International Claim Specialists on September 15, 2005.

(Doc. 12).  After the remaining defendants answered the complaint (Doc. 4), the

parties engaged in discovery.  On April 13, 2006, plaintiff filed a motion for leave to

amend the complaint to join an additional defendant, Factual Photo.  (Doc. 23).  The

parties then briefed and argued that motion, and the court granted leave to amend

the complaint and join the additional defendant.  (Doc. 33).  The amended complaint,

filed on February 2, 2007, raises two counts.  Count I is a claim for defamation and

invasion of privacy.  Plaintiff alleges that defendants repeatedly entered his property

without his permission as part of their surveillance programs, and that they made

false and defamatory statements to neighbors and others in the surrounding

community as part of an effort to spy on him.  Count II is a false light claim which

5

alleges that statements made by investigators for the defendants that plaintiff had feigned his injuries and was being investigated by the state police caused plaintiff economic and emotional injury.

After the defendants answered this amended complaint the parties engaged in discovery.  At the close of discovery, the defendants filed motions for summary judgment.  The parties then briefed the issues in those motions, bringing the case to its present posture.

**Jurisdiction**

Plaintiff is a citizen of the Commonwealth of Pennsylvania.  Defendant InPhoto Surveillance is an Illinois corporation with its principal place of business in that state.  Defendant Kroll, Inc. is a New York corporation with its principal place of business in Nashville Tennessee.  Defendant Factual Photo is an Illinois Corporation with its principal place of business in that state.  Defendant John Kasprenski is an Illinois citizen.  The amount in controversy exceeds $75,000.  Because the defendants and the plaintiff are from different states and the amount in controversy is more than $75,000, this court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1331.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

6

entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

7

Defendants InPhoto, Kroll, Inc. and Kasprenski filed a joint motion for summary judgment.  Defendant Factual Photo also filed a motion for summary judgment.  The court will address each motion in turn.

## A.  Factual Photo's Motion for Summary Judgment

### i.  Statute of Limitations

Defendant Factual Photo argues that plaintiff's claims are barred by the statute of limitations.  Factual Photo contends that the one-year statute of limitations applies to this case.  Defendant argues that plaintiff was aware in 2003 that the Railway Company had conducted surveillance on his property, having written to the railroad to complain about such activity.  In July 2004, defendant argues, plaintiff became aware that the other defendants had not performed any surveillance on his property after 2002.  Accordingly, plaintiff was aware that surveillance had been performed on his property by a party other than the original defendants to the case, and was under an obligation to act to discover the identity of the party who performed that surveillance beginning in July 2004.  Since plaintiff did not seek to add Factual Photo as a defendant within a year of that date, his claims are barred by the statute of limitations.  Plaintiff responds that his claim is not barred by the statute of limitations because of both the discovery rule and the doctrine of fraudulent concealment.

The court concludes that the doctrine of fraudulent concealment operates to protect plaintiff's claim in this case.  The Pennsylvania Supreme Court has described

fraudulent concealment as "based on a theory of estoppel." Fine v. Checcio, 870 A.2d 850, 860 (Pa. 2005).  Under that rule, "the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from right of inquiry into the facts." Id.  In addition, the Pennsylvania Supreme Court has concluded that "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." Id. at 861.  Even when a party acts to conceal the events that give rise to the cause of action, "a party who seeks to assert a cause of action against another [must] be reasonably diligent in informing himself of the facts upon which his recovery may be based." Id.

        Here, Defendant Factual Photo undertook an elaborate operation to prevent the plaintiff from discovering the identity of its investigators and their connection to Factual Photo.  Its investigators used false names, made up cover stories to explain their presence on plaintiff's property and procured false license plates for their cars in attempt to prevent plaintiff from learning who they were.  Such behavior qualifies as the sort of "fraud of concealment" which could lead "the plaintiff to relax his vigilance or deviate from right inquiry into the facts." Id. at 860.  Factual Photo cannot enjoy the repose provided by the statute of limitations when it actively sought to prevent plaintiff from learning of its activities on his property.  The Defendant also cannot rely on plaintiff's supposed July 2004 discovery that InPhoto was not involved in the 2003 surveillance as the period when the statute of limitations began to run.

The railroad, in responding to discovery requests, provided no information on

Factual Photo's involvement in the case, and investigations by both plaintiff and the

state police had failed to reveal the identity of trespassers and investigators who

entered his property in 2003.  The fraudulent concealment that operated to toll the

statute of limitations, then, did not cease because plaintiff was aware that another

party besides InPhoto, Kroll and Kraspenski engaged in surveillance.  Factual Photo

did not abandon its efforts to conceal its involvement in the case at that point.

Indeed, plaintiff overcame Factual Photo's deception and became aware of that

company's involvement only through discovery in this case that occurred in 2006.

Factual Photo's involvement in the surveillance was revealed in 2006, and plaintiff

filed a motion to amend the complaint in April 2006, well within the statute of

limitations.  Fraudulent concealment thus continued to operate to toll the statute of

limitations, and the claim was timely filed.  The motion for summary judgment is

denied on this point.

    **ii.  Defamation**

    Defendant argues that plaintiff cannot maintain a cause of action for

defamation because he has not identified any defamatory statements made by

Factual Photo or its agents and testified at his deposition that he was not aware of

who made the statements about which he complains.

    Pennsylvania has codified a defamation action, requiring that a plaintiff show:

"(1) the defamatory character of the communication. (2) Its publication by the

defendant.  (3) Its application to the plaintiff.  (4) The understanding by the recipient of its defamatory meaning.  (5) The understanding by the recipient of it as intended to be applied to the plaintiff.  (6) Special harm resulting to the plaintiff from its publication.  (7) Abuse of a conditionally privilege occasion."  42 PA. CONST. STAT. ANN. § 8343(a).  Thus, "[t]he plaintiff in an action for defamation has the burden of proving . . . the defamatory character of the communication, its publication by the defendant, and the understanding by the recipient of its applicability to the plaintiff as well as its defamatory meaning."  Ruff v. Bethlehems' Globe Pub. Co., 484 A.2d 72, 76 (Pa. Super. Ct. 1984).  The trial court is charged with "determin[ing] in the first instance, whether the communication complained of is capable of a defamatory meaning."  Zartman v. Lehigh County Human Society, 482 A.2d 266, 268 (Pa. Super. Ct. 1984).  Once the court concludes the statement is capable of such meaning, "it then becomes the jury's function to decide whether the communication was so understood by its recipients."  Id.  "A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  Id.

Here, the statements of which plaintiff complains are statements allegedly made by defendant's investigators to his neighbors and others in the community. Those statements alleged that plaintiff was faking his injuries and that he was under investigation by the State Police for theft and receiving stolen goods.  Defendant does not seriously dispute that such statements are capable of a defamatory

11

meaning, and could not do so.  Being known in the community as a liar and thief who

has come to the attention of the state police on a criminal matter would surely lower

a person's estimation in the community and discourage others from associating with

him.  Instead, defendant argues that plaintiff has no evidence by which a jury could

conclude that the statements of which plaintiff complains were made by any of

defendant's investigators.  Plaintiff responds by pointing to several pieces of

circumstantial evidence that appear to indicate that the persons who made the

defamatory statements were Factual Photo investigators.

The court agrees with the plaintiff.  While in most defamation cases the

identity of the person making the allegedly defamatory statements is clear, courts do

not preclude identifying the speaker through circumstantial evidence.  See, e.g.,

Porter v. Joy Realty, Inc., 872 A.2d 846, 849 (Pa. Super. Ct. 2005) (finding that

"substantial circumstantial evidence may be sufficient to prove publication in the

context of defamation."); Agriss v. Roadway Express, Inc., 483 A.2d 456, 464 n.2

(Pa. Super. Ct. 1984). Here, a jury could conclude that a Factual Photo investigator

made the defamatory statements based on several factors: first, the allegedly

defamatory statements were made at or around the time that Factual Photo

performed surveillance on and near the plaintiff's property.  Some of the defamatory

statements were made to plaintiff's neighbor and brother in plaintiff's driveway, and

the evidence indicates that Factual Photo Employees were in the driveway at the

time those statements were made.  While plaintiff will have to convince a jury of the

identity of these speakers and their connection to Factual Photo, the court finds that a reasonable juror could conclude that Defendant Factual Photo published defamatory statements.  The court will deny summary judgment on this count.

### iii.  False Light

Defendant argues that plaintiff cannot prevail on a false light claim because he has failed to produce any evidence of defamation.  Since very similar standards apply to defamation and false light claims, defendant insists it is entitled to summary judgment on plaintiff's false light claim.

"The tort of false light–invasion of privacy involves "'publicity that unreasonably places the other in a false light before the public.'" Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa. Super. Ct. 1999) (quoting Strickland v. Univeristy of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)).  To prevail on such a claim, a plaintiff must show "publicity, given to private facts, which would be highly offensive to reasonable person and which are not of legitimate concern to the public." Id.   "It is enough [for the plaintiff] that the defendant has given publicity to any matter concerning the plaintiff that creates a 'highly offensive' false impression about the plaintiff." Fogel v. Forbes, Inc., 500 F. Supp. 1081, 1087-88 (E.D. Pa. 1980).  As stated above plaintiff has evidence by which a jury could conclude that defendant falsely portrayed him as a thief to the public.  He therefore can survive summary judgment on this claim.

### iv.  Invasion of Privacy

13

Defendant Factual Photo also seeks summary judgment on plaintiff's invasion of privacy claim.  A defendant can be liable for invasion of privacy, Factual Photo argues, only when she believed that she lacked permission or the legal right to commit the intrusive act of which plaintiff complains, and any contact with the plaintiff must be highly offensive.  Defendant contends that employees who intruded on plaintiff's property testified that they had not seen any signs warning against trespassing on plaintiff's driveway, that they did not enter that driveway more than three times, and did not make any videotapes or perform any other type of surveillance at the residence.  They never encountered plaintiff on his property, and did not contact anyone within twenty miles of plaintiff's home about him or his property.  The only encounter with anyone on the property was with plaintiff's brother, and that contact was not intrusive.

Pennsylvania courts have recognized a tort for intrusion upon seclusion, which establishes that "[o]ne who intentionally intrudes, physically or otherwise, upon the seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."  Harrris v. Easton Publishing Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (quoting RESTATEMENT (SECOND) OF TORTS § 652B); see also McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998) (finding that "[i]n order to state a cause of action for invasion of privacy, the [plaintiffs] had to aver that there was an intentional intrusion on the seclusion of their private concerns which

14

was substantial and highly offensive to a reasonable person.").  Courts recognize three forms of invasion: "(1) by physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into plaintiff's private concerns."  Id.

In his deposition, plaintiff complained about unwanted entry onto his property. Plaintiff remembered a particular incident where a stranger in a minivan appeared uninvited on his property.  (Doc. 62-4 at 22).  When confronted by plaintiff and his brother, this intruder informed plaintiff that he had entered the property seeking information on his father, who used to work in home remodeling in the area, as plaintiff and his brother did.  (Id.).   Plaintiff remembered the intruder as a white man, of medium build.  (Id. at 23).  Angered by this trespassing, plaintiff got in his pickup truck and followed the path of the van after it left his property.  (Id. at 25).  He discovered the van and two people outside the post office in nearby Kunkletown, Pennsylvania.  (Id.).  He confronted them and warned them to stay off his property. (Id.).  He also confronted individuals in another, similar van he suspected of involvement in surveillance and trespassing.  (Id. at 28).  A day or two later, plaintiff went to the state police and filed an incident report.  (Id. at 26, 33). This incident occurred on President's Day in February 2003.  (Id. at 23).

Plaintiff also made two complaints about intrusion of seclusion on his property. The first occurred around March 5, 2003.  On that date, plaintiff's attorney wrote a

claims agent for the railway to complain about trespassing on his property by two

men in a van carrying surveillance equipment.  (Doc. 62-2).  The attorney reported

that this was the second such incident since plaintiff filed his case, and that plaintiff

had made a criminal complaint about the behavior.  (Id.).  The second complaint

occurred on May 15, 2003, Plaintiff filed an incident report with the Pennsylvania

State Police.  (See (Doc. 62-3)).  He complained that a person had driven a van onto

his property, which had been posted as "private property no trespassing." (Id.).

When plaintiff's brother approached the driver of the vehicle to find out who he was,

the vehicle turned and sped from the property.  (Id.).  In speeding from the scene,

the vehicle kicked up a small stone which damaged a window in a residence on

plaintiff's property.  (Id.).[2]  Plaintiff provided the State Police with two possible

Indiana license plate numbers.  Police were unable to identify a vehicle from those

numbers, and terminated the investigation.  (Id.).   Plaintiff could not recall another

time when he suspected that an intruder on his property came from anyone doing

surveillance in connection with his lawsuit against the railroad.  (Doc. 64-4 at 42, 44).

       The court finds summary judgment unwarranted on this claim.  The court first

concludes that a jury could find the intrusion on plaintiff's property intentional.  See

O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir. 1989) (finding that to make

---

       [2]Though the police report makes it appear that plaintiff himself witnessed the
incident, plaintiff's deposition reveals that plaintiff's brother was at the scene and plaintiff
reported the incident to the police.  (See Doc. 64-4 at 36).  Plaintiff remembered that he
and his brother both described the incident to a State Trooper who interviewed them at
their farm.  (Id. at 40).

16

a defendant liabile, the intrusion on plaintiff's seclusion must be intentional, and that "an actor commits an *intentional* intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.").  A jury could surely conclude that defendant's investigators knew that their entry on the property was unwelcome and contrary to the plaintiff's wishes.  First, a factual dispute exists over whether plaintiff had posted his driveway with "no trespassing" signs, which would surely have warned defendant's investigators that they were not welcome to enter.  Further, concealing one's identity and passing out falsehoods to mask the purpose of an investigator's presence could be viewed by a jury as evidence that the investigator was aware of an unwelcome intrusion.

Second, a jury could also conclude that the intrusion was highly offensive to a reasonable person.  Defendant's investigators repeatedly entered plaintiff's property without permission for the purpose of spying on him, fled when confronted and caused damage to the property.  Investigators entered plaintiff's property with the intention of spying on him, and used falsehoods that damaged his reputation to do so.  These investigators intruded on this property as part of a larger scheme that a jury could conclude was intended to deceive the public about plaintiff's activities and damage his reputation in order to prevail in a lawsuit.  The evidence that indicates that defendants concealed and falsified their identities to gain access to plaintiff's property only adds to the offensive nature of this intrusion.  A jury could reasonably find such intrusive and damaging behavior highly offensive.  The court will deny

17

defendant summary judgment on this point.

### B.  InPhoto Surveillance, Kroll Inc. and Todd Kasprenski's Motion for Summary Judgment

#### i.  Defamation

Defendants InPhoto Surveillance, Kroll, Inc. and Kasprenski ("InPhoto Defendants") argue that the court should grant them summary judgment on plaintiff's defamation claims because plaintiff has failed to adduce any evidence that these defendants made any defamatory statements about him.  Since plaintiff has no evidence of publication by the defendants, they are entitled to summary judgment on that claim.  Further, any defamation claims that could exist rely on statements made in 2003.  Since defendants concluded their surveillance in 2002, they should not bear responsibility for statements made later by others.

As with the case of Factual Photo, the issue with these defendants is whether plaintiff has proof that these defendants actually made any defamatory statements. Defendants contend that no evidence exists to indicate that any of the allegedly defamatory statements made about the plaintiff were made by them.  The court will grant summary judgment to defendant on this issue.  The evidence, reviewed above, indicates that defamatory statements may have been made, but no evidence indicates that any witnesses heard defamatory statements about the plaintiff before Defendant InPhoto's representatives conducted their surveillance in 2003.  In his deposition, Defendant Kasprenski testified that he conducted surveillance of the

18

plaintiff in April 2002 and on two days in May 2002.  (Deposition of Todd Kasprenski

(Doc. 64-9) (hereinafter "Kasprenski Dep.") at 19, 33, 36)  Kasprenski did not

conduct any surveillance after these dates.  (Id. at 33).   No evidence indicates that

another InPhoto employee conducted surveillance after Kasprenski did, and

Kasprenski testified that he was the only InPhoto employee on the job.  (Id. at 38).

Since the evidence also indicates that the moving defendants here were not involved

in any surveillance during the time of the alleged defamation, defendants could not

have made any of the statements in question.  Accordingly, the court will grant

defendants summary judgment on this claim.

### ii.  Invasion of privacy/false light and slander per se

The InPhoto Defendants also argue that plaintiff's claims for slander *per se*

and invasion of privacy/false light against them should fail.  They argue that plaintiff

must prove essentially the same facts on those claims that he would have to on his

claims for defamation.  Since he cannot prove that plaintiffs publicized any of the

allegedly defamatory statements, a reasonable jury could not find him responsible

for these torts either.  Defendants also dispute plaintiff's contention that his claim is

for invasion of privacy/intrusion on seclusion because plaintiff never pled that claim

and thus cannot now raise it.  Even if he could, defendants insist, plaintiff has no

evidence by which a jury could conclude that these defendants were involved in the

intrusion on seclusion which he claims.  This group of defendants' surveillance

ended in 2002, and the intrusion on plaintiff's property about which he complains

occurred in 2003.

The court will grant the defendants' motion on plaintiff's invasion of seclusion claim, regardless of whether he ever properly raised it. As described above, the incidents for which evidence exists that could give rise to such a claim–essentially those incidents about which plaintiff claimed to the police–all occurred in 2003. The evidence indicates that the surveillance by these defendants ended in 2002. They could not have been present when the invasion of seclusion took place, and the court will grant their motion for summary judgment on this point. Likewise, since the court has found that none of the allegedly defamatory statements in this case can be attributed to these defendants, summary judgment is appropriate for them on this point.

**Conclusion**

For the reasons stated above, Defendant Factual Photo's motion for summary judgment will be denied. A jury could conclude that Factual Photo employees were conducting surveillance on or near plaintiff's property when the alleged acts of defamation, false light and invasion of privacy occurred and were therefore responsible for those acts. Defendants InPhoto Surveillance, Kroll Inc. and Todd Kasprenski's motion for summary judgment will, however, be granted. No evidence indicates that these defendants conducted any surveillance on or near plaintiffs' property when the alleged defamation, false light and invasion of privacy took place. Those defendants could not, therefore, be liable for such torts. Accordingly, the

court will dismiss Defendants InPhoto Surveillance, Kroll Inc. and Todd Kasprenski and trial will be scheduled on plaintiff's claims against Defendant Factual Photo only. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID J. TANZOSH,** | : | **No. 3:05cv1084** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **INPHOTO SURVEILLANCE, KROLL,** | : | |
| **INC., TODD KAPRENSKI, and** | : | |
| **FACTUAL PHOTO, INC.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### <u>ORDER</u>

_____**AND NOW**, to wit, this 26th day of September 2008, Defendants Todd

Kasprenski, Kroll, Inc. and InPhoto Surveillance's motion for summary judgment

(Doc. 51) is hereby **GRANTED**.  Defendant Factual Photo, Inc.'s motion for

summary judgment (Doc. 49) is hereby **DENIED**.

**BY THE COURT:**


s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**
